NEW JERSEY TRUST COMPANY OF LONG BRANCH, A BANKING CORPORATION, PLAINTIFF-RESPONDENT, v. SUSSEX COUNTY DISTILLERY CO., INC., A CORPORATION, DEFENDANT, AND FRED NIEBERG, DEFENDANT-APPELLANT.

Argued October 24, 1949—Decided November 21, 1949.

*Mr. Charles Handler* argued the cause for appellant.

*Mr. Solomon Tepper* argued the cause for respondent.

The opinion of the court was delivered by

ACKERSON, J. The record discloses that between September 12, 1946, and December 2, 1946, the defendant corporation Sussex County Distillery Co., Inc. (hereinafter referred to as

the Distillery Company), executed and delivered to the General Financial (or Finance) Company (hereinafter referred to as the Finance Company), nine promissory notes secured by warehouse receipts for 55,000 gallons of apple brandy. Attached to each of these notes was a separate written guaranty of the defendant, Fred Nieberg, who at the time was the president and principal stockholder of the Distillery Company and the only officer thereof who executed said notes in its behalf. Each guaranty, so attached—and they are all alike—undertook to guarantee to the Finance Company, its successors and assigns, "and every subsequent holder of said note, * * *," the prompt payment thereof when due in the event of a default by the maker, the Distillery Company.

Thereafter, in April, 1947, Nieberg negotiated a loan from the plaintiff, New Jersey Trust Company of Long Branch (hereinafter referred to as the Trust Company) to the Distillery Company in the amount of $78,493.72, which is evidenced by a demand note of the Distillery Company to the Trust Company as payee, dated April 22, 1947. The amount was later corrected to $78,129.90 by an appropriate credit notation. This note specifies that the following collateral was deposited for the payment thereof: "negotiable warehouse receipts and notes previously given to General Financial Company and assigned to" the Trust Company. The latter company then issued its treasurer's check, for the amount then due on the original nine notes, $78,129.90, payable to the order of the Finance Company, which in turn, on April 22, 1947, assigned the warehouse receipts for the apple brandy and the nine original promissory notes to the Trust Company. While it does not appear that the assignment refers to Nieberg's personal guaranties, nevertheless, the rule is that an assignment of the principal debt, if not limited in its scope, carries with it the promises and undertakings connected therewith, and tending to secure its payment. *Westville Land Co. v. Handle*, 112 *N. J. L.* 447, 457 (*Sup. Ct.* 1933); *Wooley v. Moore*, 61 *Id.* 16 (*Sup. Ct.* 1897); 4 *Am. Jur.* (*Assignments*), § 117, p. 322; 24 *Am. Jur.* (*Guaranty*), § 60, p. 913.

The Distillery Company, by payments, reduced the note of April 22, 1947, to the sum of $76,379.90, and then defaulted, whereupon the Trust Company instituted this suit against the Distillery Company and Nieberg by a complaint in three counts. The first count is against the Distillery Company alone on the last mentioned demand note of April 22, 1947; the second is also against that company alone on another note with which we are not concerned, and the third count is against Fred Nieberg alone upon his guaranties of the nine original notes. Judgment by default was entered on the first two counts against the Distillery Company, and the case went to trial on the third count against Nieberg alone.

The case was tried before a jury. At the conclusion of the plaintiff's case, defendant, Nieberg, moved for an involuntary dismissal of the action, which was denied. At the conclusion of the whole case, plaintiff moved for a directed verdict in its favor, which was granted. Judgment was accordingly entered against the defendant, Nieberg, in the sum of $81,650.08. These rulings were made the basis of an appeal to the Appellate Division of the Superior Court, and, while pending there, was certified to the Supreme Court, *ex mero molu,* pursuant to *Rule* 1:5–1(a).

Two points are argued for reversing the judgment below, but we find it necessary to consider only one of them, viz., whether the evidence adduced, presented a jury question as to Nieberg's liability on his guaranties.

He testified that he carried on the negotiations for the new loan to the Distillery Company, evidenced by the note dated April 22, 1947, with James ("Jim") Barbour, then secretary and treasurer of the Trust Company (brother of Louis J. Barbour, who later became secretary and treasurer), and that it was agreed at the time that the proceeds of the new note would be used to pay off the Distillery Company's debt to the Finance Company, and thereby relieve Nieberg of his personal obligation for its payment. He also said that the new note was given before the Trust Company's check was delivered to the Finance Company, implying that the intention was to

discharge the old notes with the proceeds of the new loan, rather than the purchase of the old notes by the Trust Company with its independent funds. He further testified that he has not received back any of the papers (presumably the guaranties), although Barbour had promised to return them to him. And, although he, Nieberg, had asked for them, he had not pressed Barbour for their return "because he has all my papers, in fact, even my stock [Distillery Company stock], in the bank at the present time. He was holding it for me in the vault." He also stated, in response to a question by the court, that the reason why he had not asked for a written agreement to the effect that the new note was a substituted debt for the old debts was because he trusted Barbour.

As against this Louis J. Barbour, produced as a witness for the plaintiff, testified that the new note was made in the aggregate sum of the original nine notes, "* * * for our convenience. Rather than take the nine individual notes, we made one note of it for our convenience. It was a lot more simple for the records." And again when asked the question: "And why was that note taken that way, in the aggregate sum of the nine notes?" he answered: "That was the amount due to them [Finance Company] to purchase these items that they had as security, the warehouse receipts." But at another place, when asked what the new note was for, this witness answered: "To pay off—to buy off this amount due from the Financial Company." Evidently the witness had it in his mouth to say "to pay off the notes," but caught himself after a part of the answer was out. Again, a little later, being shown the same note and asked again what it was given for, said: "This was given to pay off financial company, finance company, the amount which was due them on this liquor, warehouse receipts."

In appraising this testimony it must be noted that the action against Nieberg was not upon the new note, but was predicated solely upon his guaranties of the nine original notes. And the case has proceeded throughout on the theory that the new note to the Trust Company was the sole obligation of the corporate defendant, Distillery Company, and

that Nieberg signed it as an authorized officer of that company and not in his personal capacity.

■■ With this in mind it is apparent that the foregoing testimony did not offend the parol evidence rule, and was admissible for the purpose of attempting to show that the new note was taken in place of, and extinguished the original debt, thus relieving Nieberg from his guaranty. *Ferguson Carpet Co. v. Schottenfeld,* 109 *N. J. L.* 539 (*E. & A.* 1932); *Adelman v. Franklin Washington Trust Co.,* 137 *N. J. Eq.* 257, 259 (*Ch.* 1945). Obviously the testimony hereinabove alluded to presented a fact question upon this subject which should have been submitted to the jury.

The judgment below is reversed and the cause remanded for a trial *de novo.*

*For reversal*—Chief Justice Vanderbilt, and Justices Case, Heher, Oliphant, Wachenfeld, Burling and Ackerson—7.

*For affirmance*—None.